IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,039

STATE OF KANSAS,
*Appellee,*

v.

JOHNNY C. WHITE,
*Appellant.*

SYLLABUS BY THE COURT

1.

When a district court excludes evidence at trial, the party seeking to admit that evidence must make a sufficient substantive proffer to preserve the issue for appeal. A formal proffer is not required, and we may review the claim as long as an adequate record is made in a manner that discloses the evidence sought to be introduced. The purpose of such a proffer is two-fold—first, to procedurally preserve the issue for review, and second, to substantively demonstrate lower court error.

2.

K.S.A. 2021 Supp. 22-3201(e) permits the State to amend an information at any time before a verdict if it charges no additional or different crime and if the defendant's substantial rights are not prejudiced. The State has considerable latitude in charging and amending the time periods during which a defendant is accused of sexually abusing children—even if the changes in the time frames are substantial—so long as the change would not prejudice the defendant. A district court does not abuse its discretion by allowing the State to amend an information in situations where the defendant has only minimally developed an alibi defense.

1

Review of the judgment of the Court of Appeals in 60 Kan. App. 2d 458, 494 P.3d 248 (2021). Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed August 5, 2022. Judgment of the Court of Appeals affirming the district court on the issues subject to review is affirmed. Judgment of the district court is affirmed on the issues subject to review.

*Kasper Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: In 2014, Johnny C. White pled guilty to aggravated indecent liberties with a child after admitting to raping his teenage granddaughter. In 2017, C.U., a friend of White's granddaughter, disclosed that White had sexually abused her several years prior during a sleepover. The State then charged White with two counts of aggravated indecent liberties with a child, and a jury convicted White of the first count only. A Court of Appeals panel affirmed White's conviction, and we granted his petition for review. Today we affirm the Court of Appeals and affirm White's conviction.

FACTS

In May 2017, C.U. disclosed to her aunt that she had been sexually violated several years earlier by her friend's grandfather. During a sleepover at the friend's house, C.U. said that she woke to find her panties pulled down by a man who was touching her vagina. The man then took her hand and forced her to touch his penis. This happened in

the early morning hours while C.U. was on the couch in the living room and the rest of the girls were asleep on the floor.

C.U. recalled that she was approximately eight years old when the touching occurred. The home was owned by White's daughter and her husband, the parents of C.U.'s friend. White was living in the basement of the home. During that time frame C.U. spent the night at that house nearly every weekend.

At the time of C.U.'s disclosure in 2017, White was serving a sentence at the Hutchinson Correctional Facility as the result of his 2014 guilty plea and conviction. After interviewing C.U., Wichita Detective Daniel Ribble interviewed White at the prison. White consistently denied any touching of C.U. throughout the hour-long interview. White also agreed to take a polygraph examination.

A few weeks later Detective Ribble returned to the prison with a KBI agent trained in the administration of polygraph examinations. After the examination, the agent concluded that the polygraph results showed that White "was not truthful in his responses to the relevant questions" regarding C.U.'s accusations. Ribble returned to the room, and he and the agent continued interviewing White. They told White he was not being truthful and that he had failed the polygraph. They suggested that C.U. had no reason to make up her story, that she was telling the truth, and that the only way to give C.U. closure and healing would be to confess. Eventually, when asked "how many times" the touching happened, White finally responded: "Once." He then admitted that "she's not lying to you."

White said that he came upstairs in the early morning hours, before it was light, to use the bathroom. He admitted he saw C.U. sleeping on the couch, sitting down on the couch, and touching her vagina. White continued to deny that C.U. had touched his penis,

3

reiterating that "she never touched any part of my body." The State charged White with two off-grid counts of aggravated indecent liberties with a child. Count one concerned C.U.'s allegation that White touched C.U.'s vagina, and count two concerned her allegation that White forced C.U. to touch his penis.

Before trial, the State moved to exclude from evidence any mention of the use of the polygraph during the interrogation, seeking to only admit the portion of the interview that contained the confession. White filed a motion to suppress the confession, arguing that it was coerced and involuntary. The State also sought to admit White's 2014 videotaped confession as propensity evidence under K.S.A. 2021 Supp. 60-455(d) over defense objection.

After a hearing on the motions, at which White testified, the district court ordered that neither party elicit any testimony related to the polygraph examination. The court found White's 2017 confession admissible because it was freely, voluntarily, and intelligently made. It also ruled that the State could present the 2014 video confession as propensity evidence under K.S.A. 2021 Supp. 60-455(d). In addition to the video, the district court admitted the journal entry of conviction and the 2014 interrogating officer Detective Richard Gerdsen's foundation testimony.

Just before the jury was sworn in, White stipulated in writing to having been convicted of aggravated indecent liberties with a child in 2014. In addition to the stipulation, the State played the 2014 confession video for the jury. In that video, White repeatedly described the very graphic details of the sexual encounters with his granddaughter in response to Detective Gerdsen's questions. White reiterated many times that he "tried to resist the temptations, she's my granddaughter and its wrong." White discussed how he had attempted suicide and talked about his desire to kill himself because he could not live with the shame and the guilt.

On the fourth day of trial, the State moved to amend the date range in the information to match C.U.'s trial testimony. Previously, C.U. had said the touching occurred when she was around eight years old; but at trial, in response to questions by defense counsel, she said it occurred when she was "seven [or] eight." Because the original information's date range was from January 1, 2009 to December 31, 2009, the State sought to amend the information to include the dates between January 25, 2008 and December 31, 2009 to match C.U.'s testimony. The district court permitted the amendment over defense objection.

The jury asked two questions during deliberations:  (1) "Was the interview on Aug[ust] 17th or 2nd interview with the two officers a sworn testimony by the defendant?" and (2) "May we have the transcripts for the interviews?" Before the district court could respond to these questions, however, the jury returned its verdict. The jury convicted White on count one (that he touched C.U.) and acquitted him on count two (that he forced C.U. to touch him). The district court sentenced White to a hard 25 life sentence.

The Court of Appeals assumed without deciding that it was error for the district court to admit the 2014 confession, because even if it was error, it was harmless. *State v. White*, 60 Kan. App. 2d 458, 486, 494 P.3d 248 (Kan. App. 2021). The panel identified no other trial errors and affirmed White's conviction. 60 Kan. App. 2d at 487. We granted White's petition for review.

DISCUSSION

White argues four issues on appeal:  (1) his right to present a defense was violated by exclusion of the polygraph; (2) the district court abused its discretion when it

5

permitted the State to amend the information; (3) the admission of his 2014 videotaped confession was reversible error; and (4) cumulative error denied him a fair trial. We consider each issue in turn.

*The district court's exclusion of polygraph evidence did not violate White's right to present a defense.*

White first argues that exclusion of the fact that he took a polygraph rendered him unable to argue to the jury that his confession was unreliable. He relies on *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986), to argue the constitutional right to present a complete defense "would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence."

We exercise unlimited review when the defendant claims the district court interfered with his constitutional right to present a defense. *State v. Seacat*, 303 Kan. 622, 638, 366 P.3d 208 (2016).

When a district court excludes evidence at trial, the party seeking to admit that evidence must make a sufficient substantive proffer to preserve the issue for appeal. *State v. Swint*, 302 Kan. 326, 332, 352 P.3d 1014 (2015). A formal proffer is not required, and we may review the claim as long as "an adequate record is made in a manner that discloses the evidence sought to be introduced." 302 Kan. at 332. The purpose of such a proffer is two-fold—first, to procedurally preserve the issue for review, and second, to substantively demonstrate lower court error. Here, while we find that White's proffered testimony at the pretrial motions hearing preserved the issue for our review, we conclude that the substance of that proffer is insufficient to support his claims made on appeal.

The substance of White's proffered testimony at the district court is as follows:

"[Counsel]  Can you tell the Court, you know, *all the various reasons why you changed* from maintaining that you did not do this to saying that you did.

"[White]  Well, I've suffered from blackouts for most of my life. When the detective asked me, well, maybe I did this and I just don't remember doing it, then the best answer I could give was, well, it could be possible I did this and just don't remember doing it. But after going over the police reports with you and reading all these statements and stuff like this, I don't—I don't believe I did anything to that girl." (Emphasis added.)

Now, on appeal, White argues that the jury could not make "a fully informed decision about the veracity of the confession" without having the evidence that White took "an inherently unreliable" polygraph examination. In his appellate brief, White cites to *Crane v. Kentucky* where the Court held that a defendant must be able to answer "the one question every rational juror needs answered:  If the defendant is innocent, why did he previously admit his guilt?" 476 U.S. at 689. The Court found that excluding the circumstances that prompted the confession "strip[s]" a defendant and prohibits him from casting doubt on the credibility of his confession. 476 U.S. at 689. *Crane* thus applies in situations where a defendant's right to present a defense is inhibited by a specific circumstance that the defendant is unable to describe for the jury.

Here though, the proffer does not line up with the rule from *Crane*. White tries to argue on appeal that the polygraph was the specific circumstance that induced him to change his testimony, but the substance of his proffered testimony says otherwise. As we have said, "[t]he proponent of excluded evidence has the duty of making known the 'substance' of the expected evidence in a proffer." *State v. Evans*, 275 Kan. 95, 99, 62 P.3d 220 (2003). The substance that White made known in his proffer centered on his history of alcoholism and blackouts—not taking the polygraph examination. His proffer

7

did not say that the polygraph examination or its results caused him to confess. The district court did not bar White from testifying about his history with blackouts, and therefore did not bar White from describing the reason why he confessed.

Under the proffered facts here, White cannot show that his right to present a defense was inhibited by the polygraph. We conclude that the district court did not err in excluding evidence of the polygraph examination.

*The district court did not abuse its discretion when it allowed the State to amend the information.*

We review a district court's decision to grant a motion to amend an information for abuse of discretion. *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006). An abuse of discretion occurs if the decision is arbitrary, fanciful, or unreasonable, or if it is based on an error of law or fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

The State may amend an information at any time before a verdict if it charges no additional or different crimes and if the defendant's substantial rights are not prejudiced. K.S.A. 2021 Supp. 22-3201(e). In assessing prejudice, we consider whether (1) the date was a critical issue; (2) the change implicates the statute of limitations; (3) the amendment affects an alibi defense; (4) time was an element of the offense; or (5) there is any surprise to the accused. *State v. Holman*, 295 Kan. 116, 146, 284 P.3d 251 (2012), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

As the Court of Appeals recognized, the State is given "considerable latitude in charging the time periods during which child victims have been sexually abused." *White*, 60 Kan. App. 2d at 477. For example, in *State v. Nunn*, 244 Kan. 207, 225, 768 P.2d 268 (1989), the defendant was charged with several sex crimes. On the second day of a three-day trial, the State amended the one-month long time frame in the original information to

cover a year-long period, and another two-week period was expanded to cover a one-year period. We recognized that those changes in the time frames were substantial; however, because the defendant's defense was simply a denial of the allegations, we found that there was no prejudice by the amendment. We said that "[i]t was for the jury to determine what weight and credibility should be given to the testimony of [the victim] in light of the changed dates and inconsistencies in the evidence." 244 Kan. at 227.

White contends the amendment "robbed him of a potentially viable alibi defense," arguing that the evidence showed that he was no longer living in the home during the January 1, 2009 to December 31, 2009 time frame in the original information. But while some testimony was elicited about when White moved out of the house, the record was murky on that point. The trial testimony did not develop any cognizable time frame for when White would have moved out, and several witnesses contradicted his claims. For example, when the State asked White's daughter: "In the year 2009, would Mr. White have been living with you at the 2230 address?" she replied "[y]es." And Detective Ribble testified that White did not remember exactly when he moved out but agreed it would have been sometime between 2008 and 2010 after White lost his job due to the recession. But Ribble did say that he "talk[ed] to family members who *confirmed that* [*White*] *would have been there through 2010*." (Emphasis added.)

As the Court of Appeals stated, White did "not give any specific reason he did not procure more evidence before trial to support his alibi defense. And the record fails to show that the amendment had any impact on his minimally developed alibi defense." *White*, 60 Kan. App. 2d at 479. We conclude that the district court did not abuse its discretion in permitting the amendment.

9

*Admission of White's 2014 confession was harmless.*

We review a district court's determination that the probative value of evidence outweighs its potential for undue prejudice for abuse of discretion. *State v. Boysaw*, 309 Kan. 526, 539, 439 P.3d 909 (2019).

While K.S.A. 2021 Supp. 60-455(a) generally prohibits the use of propensity evidence, K.S.A. 2021 Supp. 60-455(d) permits evidence of a defendant's prior sexual misconduct "in a criminal action in which the defendant is accused of a sex offense," and this evidence "may be considered for its bearing on any matter to which it is relevant and probative." We require the district court to weigh the probative value against the prejudicial effect before admitting this kind of evidence. *State v. Prine*, 297 Kan. 460, Syl. ¶ 3, 303 P.3d 662 (2013).

In evaluating the probative value of evidence of other crimes, the district court should consider "how clearly the prior act was proved; how probative the evidence is of the material fact sought to be proved; how seriously disputed the material fact is; and *whether the government can obtain any less prejudicial evidence*." (Emphasis added.) *Boysaw*, 309 Kan. at 541. The factors to be considered in evaluating the possible prejudicial effect include "the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct." 309 Kan. at 541.

White does not argue that his prior crime was not probative, but rather that it was highly prejudicial and unnecessary because of his stipulation. And while the Court of Appeals panel found that the district court properly and thoroughly considered *Boysaw*'s factors regarding the probative effect, it found the district court's "assessment of the

prejudicial effect was more cursory, perhaps skirting *Boysaw*'s guidance" in the factors to be considered. *White*, 60 Kan. App. 2d at 482. Specifically, the panel criticized the district court's seemingly off-base conclusion that no less prejudicial evidence was available, noting that the district court "failed to state why Gerdsen's testimony, coupled with White's stipulation, was not a less prejudicial way to admit the relevant facts about White's prior sexual abuse of his granddaughter." 60 Kan. App. 2d at 483. The panel also found that the video could "easily inflame the passions or prejudices of the jury." 60 Kan. App. 2d at 484.

The panel ultimately assumed without deciding that the district court erred in admitting the 2014 video, because the panel concluded that even if it was error, it was harmless. 60 Kan. App. 2d at 484. Because the State did not cross-petition for review of the panel's decision to assume error, the only issue now before us is harmlessness.

We determine if an error is harmless by examining whether there is a reasonable probability the error affected the trial's outcome in light of the entire record. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). "Under this analysis, we are concerned only with undue or unfair prejudice," and the State, as the party benefitting from the error, has the burden of demonstrating harmlessness. 296 Kan. at 895.

The panel cited and analyzed each of the three types of prejudice we have recognized may result from the admission of prior crimes evidence:

> "'. . . First a jury might well exaggerate the value of other crimes as evidence proving
> that, because the defendant has committed a similar crime before, it might properly be
> inferred that he committed this one. Secondly, the jury might conclude that the defendant
> deserves punishment because he is a general wrongdoer even if the prosecution has not
> established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury
> might conclude that because the defendant is a criminal, the evidence put in on his behalf

11

should not be believed."' *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 (1973)." *State v. Gunby*, 282 Kan. 39, 48-49, 144 P.3d 647 (2006).

White argues that the 2014 "video contributed to the possibility of an improperly based jury verdict." The inflammatory nature of the video, argues White, is such that there is a reasonable probability that the error affected the outcome of the trial in light of the entire record.

The panel disagreed, finding that the jury likely still would have convicted White based on the stipulation, Detective Gerdsen's testimony, and White's 2017 confession. "To have found White not guilty of either crime, the jury would have had to disbelieve White's uncontradicted admission, as well as the victim's testimony." *White*, 60 Kan. App. 2d at 486.

Though the video may have been inflammatory, we do not find that there is a reasonable probability that it affected the verdict given C.U.'s testimony and White's uncontradicted confession.

*Cumulative error did not deny White a fair trial.*

Lastly, White alleges that cumulative error deprived him of a fair trial. To determine whether cumulative error was so great as to require reversal of a defendant's conviction, we examine whether the totality of the circumstances substantially prejudiced the defendant. *State v. Rhoiney*, 314 Kan. 497, 505, 501 P.3d 368 (2021). The cumulative error doctrine does not apply in cases where only one potential error has been identified. *State v. Dixon*, 289 Kan. 46, 71, 209 P.3d 675 (2009). We thus find that there was no cumulative error.

12

Judgment of the Court of Appeals affirming the district court on the issues subject to review is affirmed. Judgment of the district court is affirmed on the issues subject to review.