NOT DESIGNATED FOR PUBLICATION

No. 126,169

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANIEL ALDEN WITHROW,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER MAGANA, judge. Submitted without oral argument. Opinion filed February 7, 2025. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and COBLE, JJ.

PER CURIAM: A jury convicted Daniel Alden Withrow of kidnapping and attempted aggravated indecent liberties with a child. Withrow now appeals his convictions, arguing the district court abused its discretion by admitting a prior conviction as evidence under K.S.A. 2023 Supp. 60-455(d) and the prosecutor committed reversible error during closing arguments. For the reasons articulated below, Withrow's claims of error fail, and we affirm his convictions.

1

*The White Glove Motel and nearby cemetery*

All minors are referenced by use of pseudonyms throughout this opinion. In May 2019, Jane Doe—who was eight years old at the time—lived at the White Glove Motel with her mother (Mother) and her mother's then boyfriend (Boyfriend). On the day at issue, Jane was playing hide-and-seek around the motel with her cousin Mary Roe and John Smith, a boy who also lived at the motel.

On this same date, Withrow worked as the supervisor of a lawn care service at a cemetery. Due to the massive area he had to mow, he sometimes had to find a place out in the field to take care of his restroom breaks. That day, Withrow shut off his mower and went to a tree line to relieve himself. That tree line stood between the cemetery area he was mowing and the White Glove Motel.

What occurred between Withrow and the children, particularly Withrow and Jane, was the topic of considerable and disputed testimony at Withrow's criminal trial.

*The children's story and subsequent charges*

While Jane and Mary were hiding from John during their hide-and-seek game, Jane spotted a man in the bushes next to a tree, waving at them. The girls did not see what the man was doing in the bushes, but he came out of the bushes and approached them. The man, later identified as Withrow, asked the girls if he could play hide-and-seek with them. The girls did not answer, but Withrow told Mary to go hide on the other side of a nearby building. Mary did as she was told which left Jane alone with Withrow.

2

Withrow then grabbed Jane up from the ground by her hips and took her into a storage shed. Jane screamed her cousin's name and Withrow covered her mouth with his hand. Jane continued to scream for Mary and Withrow then used his arm around her neck to choke her. But Mary heard Jane scream and when she found Jane in the shed with Withrow, Withrow stopped his attack and ran away. Jane was yelling and told Mary that the man kidnapped her.

The girls then ran to Mother to report what happened. Jane also told Mother that Withrow tried to pull down her pants. The girls also told Boyfriend what happened.

Mother called 911 while Boyfriend went outside to look for the man the girls described. Boyfriend found no one on foot, so he came back to the motel to get his truck and told Mother and the girls to get in as well. Mother remained on the phone with 911 as they drove into the cemetery. They found Withrow in the back of the cemetery next to lawn equipment. When they asked Withrow if he saw anyone come through on a riding lawn mower, he told Boyfriend, "No. No, I haven't." But the girls recognized him and initially told Mother, "'It's him. It's him.'" But Jane became unsure whether it was him or would not answer. Withrow told Boyfriend that he saw a man going off toward the north. At that point, Boyfriend drove everyone back to the motel and waited for the police.

Police arrived at the motel and interviewed the girls, Mother, and Boyfriend. Jane was able to identify Withrow from a photographic lineup the officers provided. Mary also identified Withrow from a photographic lineup. Mother and Boyfriend were also shown the photographic lineup, but only Mother pointed out Withrow as the man they saw at the cemetery. Withrow was arrested and questioned by law enforcement.

On May 9, 2019, Withrow was charged with one count of kidnapping and one count of attempted aggravated indecent liberties with a child. His jury trial convened about three years later.

*Withrow's testimony*

During trial, Withrow testified regarding walking to the tree line on the day of the incident to relieve himself while he was performing yard work. Withrow heard a noise as he was finishing up and saw two little girls looking at him. Withrow testified he waived at them because he was caught off guard, embarrassed, and did not know what to do. He was afraid to lose his job because of how others may perceive the situation, considering he had a prior conviction of aggravated indecent liberties with a child.

He approached the girls to tell them, "Look, don't tell anyone you saw someone taking a piss in the woods." But as he put his hand on one of the girl's shoulders, she screamed. Withrow said this caused him to panic, and he then put one hand over her mouth and the other around her waist. He claimed he "freaked out," shoved the girl away, and ran. He denied taking a girl into a storage shed.

Withrow admitted he initially did not tell the police everything about the incident when he was first interviewed. He said he was scared and embarrassed because he was a registered sex offender.

During cross-examination, Withrow recalled the girls not running or screaming when he approached, and he was able to ask the girls their names. Withrow asked the girls what they were doing, and they told him they were "'playing hide-and-go-seek'" with a friend. Withrow told the children, "'Okay. Well, maybe you guys should probably split forces here, you know, if you're playing—playing hide-and-go-seek.'" He told Mary to go one way and Jane to go the other way, but only Mary ran off and Jane stayed next to Withrow. Withrow again denied going into the shed with Jane but agreed that he put his hand on her shoulder. He testified that was when he put his hand over her mouth and wrapped his arm around her waist because she started screaming. Withrow said that was when he shoved her away and ran away.

4

Withrow also admitted during cross-examination that he initially lied to Boyfriend that another male was in the woods. He also acknowledged that he lied to the detectives about interacting with the girls, until the detectives mentioned that there was a security camera onsite, although inoperable, and that the children picked him out of a lineup.

*The jury convicts Withrow.*

The State also presented as evidence the testimony from Jane's Mother and her Boyfriend, law enforcement officers, forensic technicians, a forensic nurse, John Smith and his mother, and exhibits including videos of the children's interviews, police body camera video footage, and pictures taken of the scene. At the conclusion of trial, the jury convicted Withrow on both counts, and the district court imposed a controlling sentence of 554 months.

Withrow timely appeals.

## THE DISTRICT COURT DID NOT ERR IN ADMITTING WITHROW'S PRIOR CONVICTION AS EVIDENCE UNDER K.S.A. 2023 SUPP. 60-455(d)

Withrow first challenges the district court's admission of his prior criminal conviction. He argues that conviction was completely dissimilar to the current crime, so it had minimal probative value and was unduly prejudicial.

*Applicable legal principles*

Although K.S.A. 2023 Supp. 60-455(a) generally prohibits the use of propensity evidence, K.S.A. 2023 Supp. 60-455(d) permits evidence of a defendant's prior sexual misconduct "'in a criminal action in which the defendant is accused of a sex offense,'" and this evidence "'may be considered for its bearing on any matter to which it is relevant and probative.'" *State v. White*, 316 Kan. 208, 215, 514 P.3d 368 (2022).

5

Before admitting propensity evidence, however, the district court must still consider whether the potential prejudice outweighs the probative value of the evidence. 316 Kan. at 215. This analysis is reviewed under an abuse of discretion standard. *State v. Claerhout*, 310 Kan. 924, 927-28, 453 P.3d 855 (2019). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. 310 Kan. at 928.

The erroneous admission or exclusion of evidence is subject to review for harmless error under K.S.A. 2023 Supp. 60-261. See *State v. Shields*, 315 Kan. 814, 832, 511 P.3d 931 (2022). However, if the error implicates a constitutional right, the effect of that error must be assessed under the constitutional harmless error standard. *State v. Thornton*, 312 Kan. 829, 832, 481 P.3d 1212 (2021).

*Withrow preserved the issue for appeal.*

Preliminarily, the State contends Withrow failed to properly preserve this issue by both failing to renew his pretrial objection at trial, and then by raising a different argument on appeal than his objection at trial. K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Showalter*, 318 Kan. 338, 345, 543 P.3d 508 (2024). A recitation of additional facts is necessary to review this issue.

The State filed a pretrial motion seeking to admit three types of K.S.A. 2023 Supp. 60-455(d) evidence: Withrow's 1999 conviction of aggravated indecent liberties, involving a 14-year-old girl, and Withrow's disclosures to a social worker while in custody for the 1999 crime that he had sexually assaulted two other minor girls, a 6-year-old and a 14-year-old, neither of which resulted in criminal charges. During a pretrial motions hearing, Withrow's defense counsel's arguments focused significantly on the proposed testimony from the social worker, the disputed nature of the anticipated

6

testimony, and its likelihood to be highly prejudicial. Defense counsel then objected to the admission of Withrow's 1999 conviction due to the difference in ages of that victim as compared to the current case. Defense counsel specifically argued:

"In regards to the '99 case, the Reno County case, again, this is a situation where it's a 14-year-old. The girls here are a different age. The State's somewhat alleging to some sort of propensity to have a sexual attraction to minors. Usually, there is a different age range, and they have a particular age range, whether that be 14, 15, 6, and 8.

"And in this particular case, this is a 14-year-old girl, different age range as opposed to the girl listed in this particular situation. So, again, I think it's highly prejudicial in this case and should not be allowed to come in.

"I'd reserve the issue if the Court does allow any of this to come in, reserve the issue as to determine if we're going to use a limiting instruction for jury instructions. Obviously, we'll have time to discuss that.

"But I think in this case, the Court should not allow any of that information. So— so based on that, we're requesting the Court deny the motion."

The district judge granted the State's motion over Withrow's objection, but only as to the prior conviction:

"With regard to the Reno County prior conviction, I note the defendant's charged in this case with attempted aggravated indecent liberties and then kidnapping. The Reno County case, or conviction, aggravated indecent liberties, the fact it's a conviction of a very similar sex offense, I think, makes it more appropriate or strengthens the argument for admissibility in this case. It would go to prove a material fact, which is whether the defendant committed an attempted aggravated indecent liberties in this case and the previous conviction for a similar offense.

"This is a disputed material fact, as far as considering the probative nature versus being unduly prejudicial. Court's directed to look at how clearly the prior act was proven, then, of course, how probative it is of a material fact still has to be proved, how seriously disputed and whether the State can obtain any less prejudicial evidence. I'd focus on how clearly the act—or the prior act was proven. Clearly, the defendant pled to this. He was convicted of this. So I think it was clearly proven.

7

"A material fact is seriously disputed, and I don't know what less prejudicial evidence could be obtained in this case beyond a—just the fact of the conviction. For the record, [Prosecutor], you're not seeking to go into the underlying facts of that conviction, you just want to have the conviction itself brought into evidence?

"[PROSECUTOR]: Yes. And I can work with [Defense counsel] on what document or if we need to draft a stipulation or how he wants to do it.

"THE [JUDGE]: And that's how it oftentimes is brought in. So the facts or the underlying aspects of that typically wouldn't come in. So, essentially, the jury would hear one way or another that he's got a conviction for this offense.

"And then, of course, there is a propensity aspect to that prior conviction, and that is a prior act or offense of sexual misconduct. And under the circumstances, I think the probative value does outweigh the potential for undue prejudice when the jury is simply presented with the fact that he does have a prior conviction for an almost identical offense. And that would go to, I think, intent, certainly absence of mistake, I suppose identity, knowledge, as far as the reason for the admission to prove a material fact.

"So I'm going to grant the State's motion to bring in that prior conviction."

The district court denied the State's motion as to the social worker's proposed testimony, and that denial is not at issue here.

During trial, the parties submitted a stipulation into evidence regarding Withrow's prior conviction. The entire stipulated statement read: "On December 29, 1999, the defendant was convicted of one count of Aggravated Indecent Liberties with a Child in Reno County Kansas Case Number 99 CR 1073." During the district court's inquiry confirming Withrow's consent to the stipulation, Withrow and his counsel responded to the court as follows:

"THE COURT: And, [Defense counsel], is that correct? That's a stipulation that you and your client have agreed to as to the form of the prior coming into evidence?

"[DEFENSE COUNSEL]: That is correct, based on the Court's ruling.

"THE [JUDGE]: Correct. And just to be clear, you're not in agreement with the Court's ruling on the [K.S.A.] 60-455 as to the prior conviction, but since I have ruled that it is to be allowed, this is how you've agreed to let it be presented to the jury?

"[DEFENSE COUNSEL]: That is correct, Your Honor.

"THE COURT: And, Mr. Withrow, just to confirm, apparently, you've signed that document, but to confirm, you are in agreement with the stipulation as to the form, that it's going to be submitted as an exhibit to the jury?

"[WITHROW]: Yes, sir."

The district court clearly noted that Withrow maintained his objection to the admission of his prior conviction as K.S.A. 2023 Supp. 60-455(d) evidence but agreed only to the manner in which the evidence would be presented to the jury—through the stipulation. Under these circumstances, we find that Withrow preserved his objection at trial.

As for whether he presented the same, specific objection before and during trial that he makes on appeal, this is a closer question. It is a well-known rule that "a party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground." *Showalter*, 318 Kan. at 363.

During the pretrial hearing, defense counsel argued about the difference in ages of the prior victim and the current victim and contended the use of the prior conviction would be "highly prejudicial," yet never used the word "probative." On appeal, Withrow does not challenge the materiality of the prior conviction, but he contends it was more prejudicial than probative and focuses on the alleged lack of probative value of his prior conviction.

But when reviewing the probative value of the prior act, our Supreme Court has looked to the similarity of the facts of the prior and current crimes—which is essentially what Withrow's counsel was arguing both before trial and on appeal. See *State v. Boysaw,*

9

309 Kan. 526, 542, 439 P.3d 909 (2019) (comparing the facts of the prior incident to the current crime, including the age of the victims in each incident, to evaluate a "propensity to engage in certain conduct with a particular class of victims"). Given the similarity in defense counsel's arguments before trial and on appeal, despite the differences in language used by counsel, we have no trouble concluding Withrow's argument was preserved.

*Admission of the prior conviction was not erroneous.*

Withrow focuses his argument on one primary factor—that the probative value of the prior conviction was low because of the difference in the victims' ages and other factual dissimilarities. Withrow argues he knew the previous 14-year-old victim and was accused of having intercourse with her—where here, he was accused of attempting an inappropriate touch with a much younger girl whom he had never met. But Withrow ignores the many other factors which our Supreme Court has articulated should be considered by the district court when determining the probative value of prior crime evidence. District courts should evaluate "'how clearly the prior act was proved; how probative the evidence is of the material fact sought to be proved; how seriously disputed the material fact is; and *whether the government can obtain any less prejudicial evidence*.'" *White*, 316 Kan. at 215. And, when assessing the possible prejudicial effect, the district court should weigh such factors as "'the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct.'" 316 Kan. at 215.

Because Withrow does not address any of these other factors, he has abandoned any such arguments. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (An issue not briefed is deemed waived or abandoned.). And the district court walked through many of these factors in its analysis at the motions hearing, which supported its

discretionary decision to admit the K.S.A. 2023 Supp. 60-455(d) evidence. The prior criminal act was clearly proven, as it was a criminal conviction, and Withrow stipulated to his prior conviction for aggravated indecent liberties with a child. As to how seriously disputed the material fact was, Withrow's defense at trial was that he panicked when he thought the girls saw him urinating, and he did not intend to harm them or harbor any sexual motive. His intent, then, was very much disputed. The prior conviction was admitted into evidence in the least prejudicial manner possible—in fact, the judgment itself was not admitted, but only a one-sentence stipulation, which included no underlying facts regarding the conviction, and no witness testimony or other evidence was permitted regarding the facts of the prior conviction.

As to the prejudicial effect of the admission of the prior conviction, it is unlikely that it contributed to an improperly based jury verdict, as again, it was contained in a one-sentence stipulation. That stipulation was a small part of a two-day trial, during which the State presented 16 witnesses to testify about the present crime and introduced many exhibits to support its case, including interviews with both Jane and Mary and body camera footage of law enforcement speaking with the girls at the scene. The district court gave the jury an instruction, specifying that jurors "may not convict [Withrow] . . . simply because [they] believe[d] he committed another unlawful act." And although the prosecutor did argue in closing that the prior conviction was relevant to show Withrow's intent, the attorney also explained, "In no way is the State asking you to convict him, because in '99 he was convicted of agg[ravated] indecent liberties."

We review the district court's admission of the prior conviction evidence for an abuse of discretion. See *White*, 316 Kan. at 215. On our review of the district court's ruling, we find the court considered the necessary factors, articulated as much, and weighed the probative value of the evidence against its potential for undue prejudice. We find nothing about the ruling which would make it arbitrary, fanciful, or unreasonable, and therefore find no error.

THE PROSECUTOR DID NOT COMMIT ERROR

Withrow next argues the prosecutor committed reversible error during closing arguments by misstating the law. On our review, we find his argument unpersuasive.

*Applicable legal standards*

An appellate court uses a two-step process to evaluate claims of prosecutorial error: error and prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citations omitted.]" *Sherman*, 305 Kan. at 109.

See *State v. Blansett*, 309 Kan. 401, 412, 435 P.3d 1136 (2019). Even if the prosecutor's actions are egregious, reversal of a criminal conviction is not an appropriate sanction if the actions are determined to satisfy the constitutional harmless test. *Sherman*, 305 Kan. at 114.

Withrow concedes this issue was not raised before the district court and is being raised for the first time on appeal. Yet appellate courts will review a prosecutorial error claim based on a prosecutor's comments made during voir dire, opening statement, or closing argument even without a timely objection, but the court may figure the presence or absence of an objection into its analysis of the alleged error. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021).

*The prosecutor did not misstate the law.*

Withrow contends the State's statement during closing arguments that he committed the crime of kidnapping by deception was erroneous. He claims the following statement by the prosecutor misstated the law:

"He also used some deception. His words, you should probably split forces. He got her alone. Need to find a good place to hide. The little—the, hey, little girl, want some candy? Come look in the van. I got puppies. Let's find a good place to hide with your friends. Deception. It's by deception that she went along with him, and then force is used. There is significant—there is enough evidence under both ways in this case."

He argues the prosecutor's statement did not sufficiently support the taking by deception necessary to satisfy the legal elements of kidnapping. He also asserts Withrow's statement the prosecutor refers to in his closing—telling Mary to go to the other side of the building—was unrelated to Jane's taking because the statement was directed to Mary and did not cause Jane to move or be confined as a result.

In support of his argument, Withrow cites to K.S.A. 21-3110(5), which defines deception as "knowingly and willfully making a false statement or representation, express or implied, pertaining to a present or past existing fact." He also relies on our Supreme Court's holding in *State v. Holt*, 223 Kan. 34, 42, 574 P.2d 152 (1977), arguing the

statements he made to the children do not fit the legal definition of deception to satisfy his kidnapping conviction.

But Withrow's argument that the prosecutor's comment was improper and misstated the law is solely based on the application of the repealed definition of deception discussed in *Holt*. K.S.A. 21-3110(5) (Torrence) was repealed in 2010 and has since been replaced by K.S.A. 21-5111(e). See K.S.A. 21-5111; L. 2010, ch. 136, §§ 11, 307; H.B. 2668 (2010). Accordingly, Withrow's reliance on the *Holt* court's decision is flawed because it relies on a definition of deception that is no longer legally viable.

A prosecutor errs when his or her comments improperly undermine the State's burden of proof by misstating the law. *State v. Thomas*, 307 Kan. 733, 743, 415 P.3d 430 (2018). But prosecutors are generally afforded wide latitude in crafting closing arguments to address the weaknesses of the defense. *State v. Watson*, 313 Kan. 170, 176, 484 P.3d 877 (2021). When determining whether the prosecutor's statement falls outside the wide latitude given to the prosecutor, an appellate court does not analyze the statement in isolation but considers the context in which the statement was made. *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019).

Here, Withrow was convicted for kidnapping under K.S.A. 2018 Supp. 21-5408(a)(2), which states: "Kidnapping is the taking or confining of any person, accomplished by force, threat or *deception*, with the intent to hold such person: . . . to facilitate flight or the commission of any crime." (Emphasis added.) Deception, under the current Kansas Criminal Code, K.S.A. 21-5111(e), is defined as:

> "[K]nowingly creating or reinforcing a false impression, including false impressions as to law, value, intention or other state of mind. 'Deception' as to a person's intention to perform a promise shall not be inferred from the fact alone that such person did not

subsequently perform the promise. Falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive reasonable persons, is not 'deception.'"

Withrow did not raise any objections during the State's closing argument regarding the prosecutor's comment during the trial. He now fails to articulate how the prosecutor's comments misstated the law or fell outside the wide latitude afforded to prosecutors, as to the current and applicable legal definition of "deception." Again, an issue not briefed is deemed waived and abandoned on appeal. *Davis*, 313 Kan. at 248.

On review of the evidence presented, it was within the latitude afforded the prosecutor to argue Withrow created the false impression that the girls should split up to play their game more easily, when he was actually bringing about the opportunity for him to get one of the girls alone. He "asked if he could play hide-and-seek with the girls," recommended that the girls split up or "divide forces," told Mary which direction to go, and suggested to Jane that hiding behind the washing machine in the shed would be a good idea. By doing these things, which were supported by testimony in the record, Withrow knowingly created a false impression that he only wanted the girls to split up for the purposes of playing their game, but he really wanted to get the victim to a secluded location. This meets the legal definition of deception under K.S.A. 21-5111(e), and the prosecutor's statement was not erroneous.

CUMULATIVE ERRORS DID NOT DEPRIVE WITHROW OF A FAIR TRIAL

In his final argument, Withrow suggests his convictions must be reversed and remanded for a new trial because cumulative error prejudiced him and allowed the State to unfairly obtain his convictions.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant

15

was substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019). Yet when an appellate court finds no errors exist, the cumulative error doctrine cannot apply. *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020); see also *State v. Butler*, 307 Kan. 831, 868, 416 P.3d 116 (2018) (citing both no error and single error rules).

Because Withrow has failed to show that the district court abused its discretion by admitting K.S.A. 2023 Supp. 60-455(d) evidence or that the prosecutor committed errors during closing argument, the cumulative error doctrine offers Withrow no relief.

Affirmed.