NOT DESIGNATED FOR PUBLICATION

No. 127,238

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT C. LARSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER MAGANA, judge. Submitted without oral argument. Opinion filed February 20, 2026. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL and ATCHESON, JJ.

HILL, J.:  Robert C. Larson is serving an off-grid 25-year life sentence for his convictions for three counts of aggravated indecent liberties with B.F., a seven-year-old relative. This is his direct appeal.

Larson raises two issues:  The district court erred when it admitted what is known as propensity evidence at trial; and the court abused its discretion when it denied his sentencing departure motion. We find no legal error in admitting evidence of Larson's prior sexual misconduct with a different minor relative, E.L., and admitting evidence of

1

his prior conviction of a sex crime with another young girl because that evidence was relevant, material, and its probative value outweighed any potential prejudice. In turn, our review of the record reveals no abuse of discretion when the court denied Larson's motion for a downward departure sentence to the sentencing grid. Because there is no abuse of discretion on either issue, we affirm.

*It is useful to define our terms.*

We are called to consider the use of propensity evidence. Propensity evidence is "evidence of a particular type of prior bad act or a prior conviction offered [into evidence] to show that a person is likely to engage in that behavior again." Black's Law Dictionary 700 (12th ed. 2024). Such propensity evidence is sometimes offered in cases about sex crimes with children.

*Did Larson preserve for appeal this issue of the use of propensity evidence?*

The State argues that Larson failed to preserve this issue by failing to make a timely and specific challenge at trial to E.L.'s allegations of his sexual misconduct. The State contends that Larson's objection to the propensity evidence only referred to the stipulation about his prior conviction and not E.L.'s testimony.

We turn to the trial record to resolve this issue. We note that the matter was litigated before trial at a motion hearing, and the district court kept referring to its pretrial ruling during the trial. When the stipulation was presented to the court as an exhibit, Larson objected once more to the admission of Larson's prior conviction. Defense counsel also elaborated:

> "So I just wanted the record to be clear that while we are—we are agreeing that since this evidence has been ruled admissible that this is the best way and the least

2

prejudicial way to introduce it, but I didn't want any court of record to maybe view this later to maybe believe it was some sort of a concession to the admission of—of the evidence, if that makes sense."

The district court noted but overruled Larson's objection. We do not read that to mean counsel was referring only to the evidence of Larson's conviction. More objections were lodged. During the testimony of B.F.'s mother, Larson made a contemporaneous objection to the State's question concerning Larson's prior conviction. The court noted the objection but allowed the State's question. Then, Larson also objected during the police detective's testimony concerning E.L.'s allegations that Larson engaged in sexual misconduct with her. Larson stated his objection was based on the pretrial motions, and the court noted but overruled the objection. Finally, in Larson's motion for a new trial he again expressed his objection to the admission of all of this evidence. The trial court denied that motion.

Appellate courts do not offer free opinions. We correct legal errors and abuses of discretion. Such errors must be preserved for appeal. This means—in practical terms— that a trial court must first have a chance to consider a legal issue and rule on it, and then an objection to that ruling is lodged before we will address it. See *State v. Richmond*, 289 Kan. 419, 428-29, 212 P.3d 165 (2009). If those rulings—the claimed errors—are not preserved, then they will not be reviewed on appeal.

After mining this record, and considering all of those objections mentioned above, we conclude that the matter of the admission of all of this propensity evidence was raised, litigated, and resolved by the trial court. It is true that the language used to preserve the issue could have been clearer, but, at the same time, we are not convinced that Larson was limiting his objection to just the admission of his criminal record. Thus, we deem the issue preserved for appeal.

*A review of the law controlling propensity evidence is useful at this point.*

A Kansas court faced with deciding whether to admit propensity evidence must balance several factors. Our law provides that when a defendant is accused of a sex offense, "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." K.S.A. 2024 Supp. 60-455(d); *State v. White*, 316 Kan. 208, 215, 514 P.3d 368 (2022). Before admitting propensity evidence, however, that court must still consider whether the evidence's potential prejudice outweighs the probative value of that evidence. 316 Kan. at 215.

We look first at probative value. When gauging the probative value of evidence about a defendant's prior sexual misconduct, the district court must consider several factors: (1) "how clearly the prior act was proved"; (2) "how probative the evidence is of the material fact sought to be proved"; (3) "how seriously disputed the material fact is"; and (4) "whether the [State] can obtain any less prejudicial evidence." *State v. Boysaw*, 309 Kan. 526, 541, 439 P.3d 909 (2019).

Turning then to an assessment of prejudice, we see caselaw instructing that the district court must decide whether the evidence has potential for undue prejudice. In other words, the district court should consider: (1) "the likelihood that such evidence will contribute to an improperly based jury verdict"; (2) "the extent to which such evidence may distract the jury from the central issues of the trial"; and (3) "how time consuming it will be to prove the prior conduct." 309 Kan. at 541.

*The court here considered the admission of propensity evidence before trial.*

Before trial, the State moved to admit two kinds of propensity evidence: Larson's prior sex-crime conviction, as well as testimony of another victim about Larson's other

4

prior acts of sexual misconduct with her when she was a child. The State first offered evidence of a 2005 conviction where Larson pled guilty to lewd and lascivious behavior with a child under 16. The victim in that prosecution was the five-year-old younger sister of his then-girlfriend, who Larson was caring for at the time. Next, the State presented the testimony of E.L., another relative of Larson, who alleged that he had engaged in acts of sexual misconduct with her beginning when she was four years old. The acts were unreported at the time, and there were no pending charges related to Larson's sexual misconduct with E.L.

The district court granted the motion, thus allowing the evidence of prior sexual misconduct to be admitted at trial. The court found the evidence of Larson's prior conviction was relevant and probative, determining that the prejudice of a

"simple conviction coming in . . . would be outweighed by the probative value of the nature of the charge and the fact that the defendant was convicted of that.

"The remoteness in time, granted, it is over 15 years ago, but relatively speaking, I don't know that that outweighs the probative value. I think that's certainly something that could be argued, I suppose, by defense if they wish to argue that it was a number of years ago, so the jury shouldn't consider it. But I think the jury should have the opportunity to be aware of it under the—under the circumstances."

The court then noted the factors to consider when weighing the probative value and the prejudicial effect, finding the evidence would only involve

"a fairly short presentation to the jury, essentially just to advise them of the conviction. And that, in itself, would not be overly highlighted. So I don't see significant danger of distracting them, certainly not time-consuming and not likely to contribute to an improperly based verdict. But anything is possible."

5

Therefore, the court determined that the prior conviction's probative value outweighed the possibility for prejudice.

Turning to the evidence of Larson's sexual misconduct with E.L., the district court noted that evidence involved a longer period, beginning when E.L. was four years old and ending when she was about seven years old. The court found that the evidence was relevant, given that it involved a similarly aged victim and similar behavior by Larson—particularly when compared to this case where there was touching. The court also noted the similarity of Larson showing both victims pornographic videos. The court found that this evidence would be relevant to the State's attempts to prove the charges in this case.

The court also found that the similarity between the evidence and the acts alleged demonstrated its probative value.

> "And the case law does discuss the serious disputing material fact. Well, I think in this case, the defendant is pretty seriously disputing the material facts of the charges. So I think overall, the Court takes all—into consideration all the circumstances, and I think the finding must be that the probative value does outweigh the potential for prejudice—or undue prejudice in . . . E.L., admission of evidence. So I am going to find both of those are admissible at trial. I will find those are admissible for the requested factors of motive, intent, and absence of mistake."

Thus, the district court found both types of propensity evidence—conviction and testimony—were relevant, material, and their probative value outweighed the possibility of undue prejudice. Accordingly, the court granted the State's motion and allowed the evidence at trial.

*The court properly instructed the jury how to consider this prior crime evidence.*

In its instructions to the jury, the trial court gave a limiting instruction with regards to the propensity evidence. That instruction stated:

> "Evidence has been admitted tending to prove lewd and lascivious conduct in the presence of a child and alleging that the defendant committed an act of aggravated indecent liberties with a child, other than the present crime charged of aggravated indecent liberties with a child.
>
> "You may consider this evidence regarding the crime charged of aggravated indecent liberties with a child as evidence of defendant's propensity to commit sexual misconduct. You may give this evidence the weight, if any, you believe it should receive. You may not convict the defendant of the crime charged simply because you believe he committed another unlawful act."

*In deciding whether this evidence was admissible, trial evidence shows what the defendant did. Propensity evidence may show why those acts happened.*

The record reveals what happened in that basement between Larson and B.F. While living in his sister's basement, Larson would often show B.F. videos on his computer. The videos were initially harmless, mainly compilations of funny videos and other similar content. But Larson eventually began introducing pornographic videos to B.F., which made her uncomfortable. While watching the videos, Larson "would pull down his pants and touch his private part."

Then, Larson's behavior deteriorated from sexual touching to sexual assault. On one occasion, Larson made B.F. change into a bikini swimsuit and then made her sit on his chest. B.F. testified that he grabbed her and began licking her inner thighs. On another occasion, while playing pornographic videos on his computer, Larson told B.F. that he

needed her to sit on his hand to make his private part feel better. B.F. testified that Larson told her that his private part hurt when he watched pornographic videos. After she sat on his hand, Larson made B.F. touch his penis.

This conduct went on for several months before B.F. disclosed to her mother that Larson had been showing her pornographic videos and touching her inappropriately. An investigation ensued, during which B.F. was interviewed by a police detective twice—the second interview was recorded and submitted to the jury as evidence. Larson was subsequently charged with three counts of aggravated indecent liberties with a child.

At the jury trial, the State presented the four witnesses: (1) the victim, B.F.; (2) her mother, A.F.; (3) the victim in Larson's uncharged prior sexual misconduct, E.L.; and (4) Latavia Allen, the police detective who investigated this case. After the State rested its case, Larson testified in his own defense.

At the beginning of the trial, and outside the jury's presence, Larson stipulated to the prior conviction but maintained his objection to the propensity evidence by stating:

> "[W]e are agreeing that since this evidence has been ruled admissible that this is the best way and the least prejudicial way to introduce it, but I didn't want any court of record to maybe view this later to maybe believe it was some sort of a concession to the admission of—of the evidence, if that makes sense."

The prior conviction stipulation was presented to the jury as an exhibit, which stated:

> "The parties stipulate the following facts are true.

"On February 27th, 2006, the defendant was convicted of lewd and lascivious behavior with a child under the age of 16. The conviction referenced in Number 1 was for the following set of facts.

"On May 3rd, 2005, the defendant was over 18 years of age, and [K.E.T.] was five years old.

"On May 3rd, 2005, the defendant was babysitting [K.E.T.]. While in the bedroom of the apartment, the defendant masturbated in the presence of [K.E.T.]. His erect penis was clearly visible to [K.E.T.], and he continued to ejaculation. The defendant admitted to the conduct during the course of the police investigation."

*Larson's prior crimes and sexual misconduct were material and probative.*

The similarities between B.F.'s and E.L.'s allegations of what Larson did establish that the probative value of this evidence was high. In E.L.'s testimony, she alleged that Larson began by exposing himself when she was four years old, and, over time, he would show her pornography and touch her over her underwear with a massager. In B.F.'s testimony, she alleged that Larson began by showing her pornography and masturbating in front of her but then escalated to more sexually inappropriate conduct. The allegations by E.L. suggested that Larson had a propensity to engage in sexual misconduct with young girls and that his conduct with B.F. was not a mistake or inadvertent.

Additionally, the evidence of Larson's prior conviction was relevant and material because the conduct in that case involved Larson exposing himself to a five-year-old girl whom Larson was meant to be caring for at the time. The prior conviction shows Larson's propensity for engaging in this type of conduct and is relevant to show his intent, motive, and absence of mistake in this case.

9

*The probative value of Larson's prior sexual misconduct outweighs the possibility for undue prejudice.*

The probative value of Larson's prior acts of sexual misconduct exceeds the potential for undue prejudice. Larson fully disputed the charged offenses. Larson's victims in this case and in prior instances of sexual misconduct were close in age, ranging from five years old to about seven years old. Larson's conduct in all three instances was also very similar. He exposed and touched himself for sexual pleasure in the presence of a child. He showed pornographic videos to two of the three victims, B.F. and E.L.—both relatives of his.

And the probative value of this evidence is not outweighed by the possibility of undue prejudice. Larson's past sexual misconduct is highly relevant, especially given the striking similarities between the prior conduct and the conduct alleged here.

We find no abuse of discretion by the district court here. We turn to Larson's claim about the denial of his downward departure sentence.

*Jessica's Law sentences are statutorily set unless a defendant demonstrates substantial and compelling reasons to depart.*

Sentencing under Jessica's Law, as set forth in K.S.A. 21-6627(a)(1)(C), generally provides for a life sentence with a mandatory minimum term of imprisonment. The statute does provide a procedure for imposing a departure sentence from the mandatory minimum sentence. If it is the offender's first Jessica's Law conviction, the sentencing court may depart from the mandatory minimum and impose a sentence under the Kansas Sentencing Guidelines Act, K.S.A. 21-6801 et seq., if, "following a review of mitigating circumstances," the court finds substantial and compelling reasons to do so. K.S.A. 21-6627(d)(1); *State v. Powell*, 308 Kan. 895, 902, 425 P.3d 309 (2018). This is the relief sought by Larson and denied by the sentencing court. We review a district court's

10

decision on a departure sentence for an abuse of discretion, i.e. whether the court made an error of fact or law or its decision was unreasonable. 308 Kan. at 902-03.

When deciding a departure motion in a Jessica's Law case, a sentencing court must first review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then the court determines, based on all the facts of the case, "'whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence.'" 308 Kan. at 913-14. "[I]f substantial and compelling reasons are found for a departure to a sentence within the appropriate sentencing guidelines, the district court must state on the record those substantial and compelling reasons." *State v. Jolly*, 301 Kan. 313, 324, 342 P.3d 935 (2015); see also *State v. McCormick*, 305 Kan. 43, 50-51, 378 P.3d 543 (2016) (reversing Jessica's Law sentence when appellate court was not "wholly confident" that the statutory principles outlined in *Jolly* were followed).

When denying a departure sentence, the district court does not need to affirmatively articulate that it refrained from weighing mitigating and aggravating circumstances. *Powell*, 308 Kan. at 908. Nor is the court required to make findings or state its reasons when denying a request for departure from the mandatory minimum under Jessica's Law. See *State v. Dull*, 298 Kan. 832, 841-42, 317 P.3d 104 (2014).

There are limits to this departure. The district court cannot impose a downward dispositional departure or a downward durational departure to less than 50 percent of the sentencing grid's mid-range sentence for any crime of extreme sexual violence, as defined in K.S.A. 21-6815. K.S.A. 21-6818(a); *State v. Dunn*, 313 Kan. 8, 10-11, 483 P.3d 446 (2021).

If any of the factors articulated by the sentencing court would justify the departure, the decision will be upheld on appeal. A departure may be justified by the collective

11

factors even if no one factor, standing alone, would justify a departure, so long as they constitute a substantial and compelling basis. *State v. Brown*, 305 Kan. 674, 694, 387 P.3d 835 (2017). A single mitigating factor alone can constitute a substantial and compelling reason for departure under Jessica's Law. *Jolly*, 301 Kan. at 327. Mitigating factors that justify a departure in one case may not justify a departure in all cases. *State v. Randle*, 311 Kan. 468, 482, 462 P.3d 624 (2020).

*Denying Larson's departure motion was not an abuse of discretion.*

The sentencing court denied Larson's departure motion and expressly found that substantial and compelling reasons did not justify a departure. The court also found that Larson's limited criminal history involved a prior sexual misconduct conviction with a child, thus concluding that Larson posed a threat to the public. In Jessica's Law cases, the sentencing court is required to provide its reasons for departing from the statutory sentence, but the court is *not* required to do so when it finds the statutory sentence to be appropriate. See *Powell*, 308 Kan. at 908; *Dull*, 298 Kan. at 842.

A reasonable judge would find that the nature of Larson's current convictions, his prior conviction for similar sexual misconduct with a child, and the ages of the victims support the sentencing court's conclusion that mandatory life imprisonment without the possibility of parole for 25 years was appropriate. The sentencing court did not abuse its discretion by denying Larson's motion for a downward dispositional departure sentence.

Affirmed.